ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ALFREDO D. GÁLVEZ RODRÍGUEZ<br><br>Parte Recurrida<br><br>v.<br><br>JANICE M. VÉLEZ RIVERA POR SÍ Y EN REP. DE ELIAN DAEL VÉLEZ<br><br>Parte Peticionaria | KLCE202300530 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CG2021RF00664 (Sala 601)<br><br>Sobre: Filiación, Custodia Compartida, Relaciones Paternofiliales |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

Rivera Pérez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece ante nos la Sra. Janice M. Vélez Rivera (en adelante, la Sra. Vélez Rivera o parte peticionaria) y nos solicita la revisión de dos Órdenes emitidas y notificadas el 11 de abril de 2023, por el Tribunal de Primera Instancia (en adelante, TPI), Sala Superior de Caguas. En la primera orden el foro primario declaró No Ha Lugar la *Moción en Solicitud de Reconsideración de Orden* y dispuso que el tribunal le había concedido oportunidad a la parte aquí peticionaria de comparecer para la realización del informe social y luego de radicado el mismo se informó que nunca compareció ni se sometió al proceso y que luego de radicado el informe, el tribunal lo refiere nuevamente y la parte tampoco compareció."[1] En la segunda orden el TPI también declaró No Ha Lugar la *Urgente Moción en Solicitud de Señalamiento de Vista* y dispuso lo siguiente: "[e]l tribunal refirió el caso nuevamente a la

---

[1] Anejo A del Apéndice de *Certiorari Civil*, pág. 1.

Número Identificador

SEN2023 _____

Unidad de Trabajo Social y la parte no compareció a ninguna de las citas programadas por la Unidad de Trabajo Social [...]."[2]

Por los fundamentos que se expresaran a continuación se expide el auto de *Certiorari* y se revocan las *Ordenes* recurridas.

**-I-**

El 8 de septiembre de 2021, el Sr. Gálvez Rodríguez presentó petición de filiación, custodia compartida, relaciones paternofiliales y pensión en contra de la Sra. Vélez Rivera por sí y en representación de su hijo.[3] En su petición, el Sr. Gálvez Rodríguez reconoció la paternidad del menor E.D.V. y solicitó al foro de instancia que ordenara al Registro Demográfico la inscripción de su nombre como padre del menor en el Certificado de Nacimiento, que le otorgara la patria potestad compartida, le otorgara la custodia compartida y que le fijara una pensión alimentaria en beneficio del menor.

Luego de varios trámites procesales, el TPI celebró juicio en su fondo, a la cual no compareció la Sra. Vélez Rivera[4] y dictó *Sentencia* en rebeldía el 8 de noviembre de 2022, notificada el 28 de noviembre de 2022, mediante la cual declaró Con Lugar la petición de filiación, ordenó que en el certificado de nacimiento del menor E.D.V. se inscribiera como padre al Sr. Gálvez Rodríguez, se le concedió la patria potestad compartida, se establecieron relaciones paterno filiales en fines de semanas alternos sábado y domingo de 9:00 a.m. a 5:00 p.m. y todas las semanas los lunes y miércoles de 4:00 p.m. a 7:00 p.m. Además, el TPI refirió el caso a la Oficina de Examinadores de Pensiones Alimentarias para establecer la obligación alimentaria y a la Unidad Social de Relaciones de Familia

---

[2] Anejo C del Apéndice de *Certiorari Civil*, pág. 4 5.
[3] Anejo H del Apéndice de *Certiorari Civil*, págs. 17-19.
[4] Según surge de la Entrada Núm. 12 del expediente del Caso Núm. CG2021RF00664 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), la Sra. Vélez Rivera fue emplazada por edicto el 29 de diciembre de 2021.

y Menores (en adelante, Unidad Social) para estudio social de custodia compartida.[5]

El 7 de diciembre de 2022, la Sra. Maribel García Cotto, Supervisora Auxiliar de la Unidad Social, presentó moción mediante la cual informó que la trabajadora social asignada al caso era la Sra. Marjorie Franco Rosario, solicitó acceso al expediente electrónico de SUMAC e informó que durante el proceso para la asignación del caso se habían realizado intentos para contactar a la Sra. Vélez Rivera por medio de llamadas telefónicas se le dejó mensajes y no los contestó así como se le habían enviado mensajes por correo electrónico que no los contestó.[6] Además, se informó que el plan filial del progenitor con el menor E.D.G.V. no había comenzado dado que la parte aquí peticionaria no ha respondido a las llamadas del Sr. Gálvez Rodríguez.[7] Por último, se solicitó que se le ordenara a la Sra. Vélez Rivera comparecer a la Unidad Social el 15 de diciembre de 2022, durante el horario de 8:30 a.m. a 3:00 p.m. para que ofreciera toda la información que se requiere para el inicio de la evaluación social.[8] Posteriormente, la Unidad Social solicitó que se le ordenara a la parte recurrida conectarse el 19 de diciembre de 2022, a la 1:30 p.m., mediante videoconferencia a través de la plataforma de Microsoft Teams. El 9 de diciembre de 2022, el foro primario les ordenó a las partes cumplir con todos los requisitos de la Unidad Social.[9]

Así las cosas, el 19 de diciembre de 2022, la Unidad Social presentó *Moción Informativa* en la cual comunicó que el 9 de

---

[5] Anejo J del Apéndice de *Certiorari Civil*, págs. 22-25. El 16 de diciembre de 2022, el Sr. Gálvez Rodríguez presentó *Moción Solicitando Nueva Notificación de Sentencia por Edicto* debido a que por error del periódico Primera Hora la misma no fue publicada y el foro primario la autorizó nuevamente el 20 de diciembre de 2022. Véase: Anejos N y P del Apéndice de *Certiorari Civil*, págs. 29 y 31. El 27 de diciembre de 2022 se publicó la sentencia por edicto. Véase: Anejos W y X del Apéndice de *Certiorari Civil*, págs. 40-41.
[6] Anejo K del Apéndice de *Certiorari Civil*, pág. 26.
[7] *Id.*
[8] *Id.*
[9] Anejo M del Apéndice de *Certiorari Civil*, pág. 28.

diciembre de 2022 había contactado a un familiar de la Sra. Vélez Rivera, a quien se le notificó la cita para la entrevista inicial que había sido pautada para el 15 de diciembre de 2022 a la cual no compareció la parte peticionaria.[10] Ante esta situación, la Unidad Social citó nuevamente a la Sra. Vélez Rivera para entrevista de manera presencial, el 9 de enero de 2023 a las 8:30 a.m. A esta cita no compareció la Sra. Vélez Rivera y no se excusó de la cita programada.[11]

El 10 de enero de 2023, el TPI le ordenó a la Unidad Social a presentar en el término de veinte (20) días someter informe social de acuerdo con la información recopilada e informando las incomparecencias de las partes.[12] El 27 de enero de 2023, la Unidad Social presentó *Moción de Labor Realizada.*[13] Según surge de la comunicación de labor realizada por la Unidad Social en el área de **antecedentes legales** se destaca que para el 29 de julio de 2021 en el caso OPA-2021-013811 se dictaminó resolución final denegando orden de protección en contra del Sr. Gálvez Rodríguez. En cuanto a los **antecedentes sociales** surge de la comunicación de *Labor Realizad*a que la Sra. Vélez Rivera tiene historial previo en el caso E CU2010-0091, en el cual se rindió informe social para el 9 de diciembre de 2010 y se recomendó que el padre de los dos menores objeto de estudio en ese caso ostentara la custodia por las condiciones de salud mental que tenía la parte peticionaria y que los menores estaban en riesgo. Además, indicaba que la Sra. Vélez Rivera debido a esta situación tuvo una intervención del Departamento de la Familia (en adelante, DF) y que por tanto los menores fueron ubicados con su padre. De la entrevista al Sr. Gálvez Rodríguez con la trabajadora social asignada al caso surge:

---

[10] Anejo O del Apéndice de *Certiorari Civil*, pág. 30.
[11] Anejo R del Apéndice de *Certiorari Civil*, pág. 33.
[12] Anejo S del Apéndice de *Certiorari Civil*, pág. 34.
[13] Anejos T y U del Apéndice de *Certiorari Civil*, págs. 35-38.

Explicó que luego comenzó la pandemia y todo estuvo cerrado. Indicó que luego se entera de que la progenitora lo había inscrito con otro nombre. Por lo que, solicitó mediante el tribunal reconocer a su hijo. Comentó que la señora Vélez Rivera es inestable emocionalmente. Expresó que compartía con el menor en la residencia materna cuando ella lo permitía. Señaló que, desde marzo de 2022, no se relaciona con su hijo. En el mes de septiembre de 2022, tuvo un accidente y pudo ver al niño mediante videollamada. Mencionó que posterior a eso la señora Vélez Rivera se entera de que tiene pareja y no le contestó las llamadas. Informó que en una ocasión tuvo una discusión con la señora Vélez Rivera porque este deseaba llevarse el niño para una actividad y ella no se lo permitió. Narró que la madre le gritó en presencia del niño y este se fue del lugar. Manifestó que ella lo acusó de violencia doméstica y durante la vista ella fue arrestada por otro caso. Explicó que el tribunal llevaba varios años buscándola por una deuda de pensión alimentaria de sus hijos mayores. Mencionó que estuvo un mes aproximadamente confinada y desconoce con quién estuvo su hijo. Enfatizó que, desde ese suceso, ella no le contesta a los alguaciles que van a su residencia ni asiste a citas del tribunal. El señor Gálvez Rodríguez desea compartir con su hijo y estar presente en cada etapa de su desarrollo.

En su moción de Labor Realizada, la Sra. Franco Rosario, trabajadora social asignada al caso, recomendó lo siguiente:

"Debido a las circunstancias del caso, no estamos en posición de brindar recomendaciones, ya que no pudimos llevar a cabo el protocolo de evaluación social. Sin embargo, es un hallazgo importante los antecedentes de la señora Vélez Rivera y nos preocupa el bienestar del niño, al no conocer el estado emocional actual de la progenitora."

El 30 de enero de 2023, el TPI le concedió veinte (20) días a las partes para que se expresaran respecto al informe de labor realizada y si se allanaban a las recomendaciones.[14]

El 6 de febrero de 2023, el Sr. Gálvez Rodríguez presentó *Moción en Solicitud de Custodia Completa del Menor* en la cual solicitaba que en atención al informe de Labor Realizada se le otorgara la custodia del menor.[15] Ese mismo día, el TPI señaló vista urgente presencial para el 21 de febrero de 2023, a las 11:00 a.m.,

---

[14] Anejo V del Apéndice de *Certiorari Civil*, pág. 39.
[15] Según surge de la Entrada Núm. 35 del expediente del Caso Núm. CG2021RF00664 en SUMAC.

la cual notificó por correo postal al Sr. Gálvez Rodríguez y se ordenó citar a la Sra. Vélez Rivera por conducto de los alguaciles.[16] Es importante puntualizar que no surge de nuestro expediente judicial ni de SUMAC que esta orden le haya sido notificada a la Sra. Vélez Rivera a su dirección postal de récord.[17] Del diligenciamiento de la citación a la Sra. Vélez Rivera surge por nota del alguacil que el 8 de febrero de 2023 se le dejó informe de notificación para que compareciera a recoger citación el 14 de febrero de 2023 y no compareció.[18] El 16 de febrero de 2023, nuevamente los alguaciles intentaron diligenciar personalmente la citación de la Sra. Vélez Rodríguez y sobre el particular expresaron que: "[h]oy nos presentamos en la dirección nuevamente y no había nadie en la Residencia. Se dejó copia de la misma debido a lo cercano del señalamiento."[19]

El 21 de febrero de 2023, el TPI celebró la vista de custodia a la cual compareció el Sr. Gálvez Rodríguez y su representante legal, el Lcdo. Luis R. Rodríguez Cintrón y no compareció la Sra. Vélez Rivera ni representación legal alguna.[20] Ese mismo día, el foro de instancia dictó *Resolución* concediéndole la custodia del menor E.D.G.V. al Sr. Gálvez Rodríguez y ordenó que cuando fuera a buscar al menor estuviera acompañado por un agente de la policía.[21] Esta orden se cumplió y la custodia del menor la ostenta el Sr. Gálvez Rodríguez.

Así las cosas, el 3 de marzo de 2023, la parte peticionaria compareció en el caso mediante *Moción Asumiendo Representación*

---

[16] Anejo Z del Apéndice de *Certiorari Civil*, pág. 43.
[17] Del expediente judicial surge que la dirección postal de la Sra. Vélez Rivera es Condominio Santa Juana, Apt. 1108, Caguas, PR 00725.
[18] Véase nota al calce número 16, pág. 44.
[19] *Id.*
[20] Anejo AA del Apéndice de *Certiorari Civil*, pág. 45.
[21] Anejo F del Apéndice de *Certiorari Civil*, pág. 9. Según surge de la Entrada Núm. 52 del expediente del Caso Núm. CG2021RF00664 en SUMAC, el TPI emitió *Resolución Enmendada* el 28 de febrero de 2023, notificada el 6 de marzo de 2023. En la cual dispone que concede la custodia "a raíz de la prueba desfilada en sala".

*Legal* presentada por la Lcda. Cynthia E. Vázquez Estrada.[22] Inconforme con el dictamen, la parte aquí peticionaria presentó el 6 de marzo de 2023, *Urgente Moción de Reconsideración de Resolución y Orden[23]* y el 8 de marzo de 2023, *Moción en Solicitud de Reconsideración de Orden.[24]*

En síntesis, en sus escritos la Sra. Vélez Rivera argumentó que el TPI le concedió la custodia del menor al Sr. Gálvez Rodríguez por la recomendación de la Trabajadora Social en su escrito titulado Labor Realizada y por la parte aquí peticionaria no haber cooperado con los procedimientos. Además, expresó que su representante legal la había orientado del incumplimiento con los procesos del tribunal y de la obligación de cumplir con las órdenes del tribunal. Manifestó que debido a que en dos ocasiones que acudió al tribunal para atender otros asuntos había sido arrestada, vive temerosa del tribunal y del sistema. Arguyó, además, que el escrito de *Labor Realizada* carece de una evaluación del padre en aspectos esenciales incluyendo si este está capacitado económica y mentalmente para tener el menor, si ha cometido delitos, si tiene acomodo adecuado para el menor, su grupo de apoyo y expuso que el informe está carente de entrevistas a colaterales, vistas a la comunidad, escuela del menor y entrevistas a familiares paternos y maternos. Por último, sostuvo que desde que el menor se encuentra con su padre han sido infructuosas las gestiones para saber cómo se encuentra el menor, debido a que el Sr. Gálvez Rodríguez cerro el canal de comunicación.

El 9 de marzo de 2023, el TPI respecto a las mociones de reconsideración pendientes las dispuso no ha lugar en este momento y refirió el caso a la Unidad Social para la continuación de

---

[22] Anejo CC del Apéndice de *Certiorari Civil*, pág. 47.
[23] Anejo G del Apéndice de *Certiorari Civil*, págs. 10- 16.
[24] Anejo EE del Apéndice de *Certiorari Civil*, págs. 49-51.

los procedimientos y ordenó evaluaciones psicológicas y pruebas de dopaje.[25] En atención a la orden del tribunal, la Unidad Social contactó a la representación legal de la Sra. Vélez Rivera debido a que se le dificultaba coordinar una cita con su clienta y el 13 de marzo de 2023 la parte peticionaria se contactó con la Unidad Social, fue orientada y se coordinó la entrevista inicial para el 15 de marzo de 2023 de forma presencial.[26] A la cita de la entrevista inicial en la Unidad Social la Sra. Vélez Rivera no compareció ni se excusó.[27]

El 16 de marzo de 2023, el TPI dictó *Orden* en la cual dispuso: "[a]nte la incomparecencia de la parte se releva a la Unidad de Trabajo Social de realizar informe y se mantienen las órdenes y resoluciones en el caso de marras."[28] Así las cosas, el 28 de marzo de 2023, la parte aquí peticionaria presentó *Moción en Solicitud de Reconsideración de Orden,*[29] mediante la cual le solicitó excusas al tribunal por su incomparecencias previas, y solicitó se le concediera una oportunidad final para comparecer a la Unidad Social. Además, sostuvo que le removieron la custodia del menor por su incomparecencia al tribunal, y sin un informe social formal que contenga toda la investigación que fundamente y apoye al padre como recurso idóneo para ostentar la custodia del menor.[30] El TPI le concedió un término de veinte (20) días al Sr. Gálvez Rodríguez para replicar.[31]

A los dos días siguientes, la Sra. Vélez Rivera presentó *Urgente Moción en Solicitud de Señalamiento de Vista*[32] en la cual reiteró sus planteamientos anteriormente expuestos. Además, alegó que el

---

[25] Anejo FF del Apéndice de *Certiorari Civil*, pág. 52.
[26] Anejo GG del Apéndice de *Certiorari Civil*, pág. 53.
[27] *Id.*
[28] Anejo C del Apéndice de *Certiorari Civil*, pág. 4.
[29] Anejo B del Apéndice de *Certiorari Civil*, págs. 2-3.
[30] *Id.*
[31] Según surge de la Entrada Núm. 65 del expediente del Caso Núm. CG2021RF00664 de SUMAC.
[32] Anejo E del Apéndice de *Certiorari Civil*, págs. 6-8.

padre del menor no le permite ver al menor, que le ha prohibido la comunicación para saber cómo se encuentra su hijo, que está tomando determinaciones respecto al menor sin consultarle, como sacarlo del colegio al cual asistía, y que como madre tiene derechos de patria potestad y a relacionarse con su hijo de lo cual ha sido privada. En su moción solicitó una vista urgente para que se determinaran asuntos de relaciones materno filiales y patria potestad, así como reiteró su solicitud de un nuevo referido a la Unidad Social.

El 11 de abril de 2023, el foro primario declaró No ha Lugar la *Moción en Solicitud de Reconsideración de Orden* y dispuso que: "[e]l tribunal concedió oportunidad a la parte demandada de comparecer durante la realización del informe, luego de radicado el mismo se informó que la parte demandada nunca compareció ni se sometió al proceso, luego de radicado el informe el tribunal lo refiere nuevamente y la parte tampoco compareció [...]."[33] Ese mismo día, el TPI también declaró No Ha Lugar la *Urgente Moción en Solicitud de Señalamiento de Vista* y dispuso lo siguiente: "[e]l tribunal refirió el caso nuevamente a la Unidad de Trabajo Social y la parte no compareció a ninguna de las citas programadas por la Unidad de Trabajo Social [...]."[34]

Inconforme con la determinación del foro de instancia, el 11 de mayo de 2023 presentó ante nos *Urgentísima Solicitud de Auxilio de Jurisdicción* y *Certiorari Civil*. En su recurso de *certiorari* alegó que el TPI cometió los errores siguientes:

> **Primer error:** Erró el Honorable Tribunal de Primera Instancia, al abusar de su discreción en su poder de parens [patriae] al ordenar arbitrariamente la remoción de la custodia del menor E.D.G.V. a la [peticionaria], sin mediar una investigación social que lo justifique, sin determinar la capacidad del recurrido para ostentar la custodia del menor, sin existir fundamentos que lo

---

[33] Anejo A del Apéndice de *Certiorari Civil*, pág. 1.
[34] Según surge de la Entrada Núm. 68 del expediente del Caso Núm. CG2021RF00664 de SUMAC.

justifiquen, sin tomar en consideración y regirse por el criterio del bienestar y los mejores intereses del menor y sin tomar en consideración y regirse por los criterios aplicables al proceso de adjudicación de custodia de un menor, en contravención al debido proceso de ley.

**Segundo error:** Erró el Honorable Tribunal de Primera Instancia, al abusar de su discreción en su poder de parens [patriae] al privar arbitrariamente a la [peticionaria] de su derecho a relacionarse filialmente con su hijo, sin el debido proceso de ley.

El 12 de mayo de 2023, le concedimos a la parte recurrida hasta el martes, 16 de mayo de 2023, a las 2:00 pm, para expresarse sobre la solicitud de auxilio de jurisdicción y diez (10) días para expresar su oposición al recurso presentado. Luego de una solicitud de prórroga presentada por el Sr. Gálvez Rodríguez para expresarse sobre la solicitud de auxilio de jurisdicción, que no fue concedida, el 16 de mayo de 2023, se denegó la solicitud de auxilio de jurisdicción y se le concedió un término de quince (15) días a la parte recurrida para presentar su oposición al recurso. El 2 de junio de 2023, el Sr. Gálvez Rodríguez presentó *Oposición a la Expedición del Auto de Certiorari.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer el derecho aplicable.

**-II-**

**-A-**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León Corp. v. Am. Int'l Ins. Co.*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad

aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León Corp. v. Am. Int'l Ins. Co.,* supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari,* bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, a la pág. 337. Dicha Regla dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones:

> "cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 [de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57,] o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra.*

No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia:

> "cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia." *Íd.*

Al denegar la expedición de un recurso de *certiorari* en estos últimos casos, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que "el Tribunal de Apelaciones no tiene que fundamentar su decisión." *Íd.*

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de

una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**-B-**

La patria potestad se define como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación. Artículo 589 del Código Civil de 2020, 31 LPRA sec. 7241. La custodia, por su parte, es un componente de la patria potestad porque impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía. *Torres, Ex Parte*, 118 DPR 469, 476 (1987).

Por su parte, la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, Ley Núm. 223 de 21 de noviembre de 2011, según enmendada, 32 LPRA sec. 3186 (en adelante, Ley Núm. 223-2011), persigue, entre otros, proteger y procurar el mejor bienestar de los niños y niñas de una pareja divorciada o de una relación consensual cuyos miembros se han separado; y establecer los criterios que deberá considerar el TPI al

adjudicar la custodia. Véase, *Exposición de Motivos* de la Ley 223-2011, *supra.*

El propósito de esta Ley es establecer la política pública a favor de la promoción de la custodia compartida y corresponsabilidad sobre los hijos. Artículo 2 de la Ley Núm. 223-2011, 32 LPRA sec. 3181. El Artículo 602 del Código Civil de 2020, 31 LPRA sec. 7281, define al igual que la Ley Núm. 223-211, supra, el concepto de custodia compartida de la siguiente manera:

> "Custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.
> La custodia compartida no requiere que un menor pernocte el mismo tiempo en la residencia de ambos progenitores. En este caso, el tribunal puede conceder la custodia compartida de los hijos menores de edad o de hijos mayores de edad de los que comparten la patria potestad prorrogada, si el otro progenitor se relaciona de forma amplia y desempeña responsablemente todas las funciones que como progenitor le corresponden y la patria potestad le impone."

Por su parte, la Ley Núm. 223-211 en su Artículo 7, 32 LPRA sec. 3185, desglosa los criterios que el foro primario deberá considerar al adjudicar la custodia compartida:

1. La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2. El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3. La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4. El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5. Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6. La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7. Que la decisión no sea producto de la irreflexión o coacción.

8. Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9. Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10. Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11. Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12. La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13. Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

14. Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor. (Énfasis suplido).

Sobre el mismo particular, el Artículo 604 del Código Civil de 2020, 31 LPRA sec. 7283, adoptó los criterios a evaluar en toda

determinación de custodia esbozados en la Ley Núm. 223-2011, *supra*.[35]

El Artículo 9 de la Ley Núm. 223-2011, 32 LPRA sec. 3187, que la custodia compartida no se considerara beneficiosa y favorable para los mejores intereses del menor en los siguientes casos:

1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7) Que la decisión no sea producto de la irreflexión o coacción.

---

[35] En específico el Artículo 604 del Código Civil de 2020, *supra*, dispone lo siguiente:

"El tribunal debe evaluar los siguientes criterios en toda determinación de custodia:
(a) la salud mental de ambos progenitores y de los hijos;
(b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
(c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
(d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;
(e) el historial de cada progenitor en la relación con sus hijos;
(f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;
(g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;
(h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;
(i) la razón o los motivos de los progenitores para solicitar la custodia compartida;
(j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;
(k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;
(l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y
(m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos."

8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13) Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.

Por su parte, el Artículo 605 del Código Civil de 2020, 31 LPRA sec. 7284, adoptó los criterios que impiden la adjudicación de la custodia compartida esgrimidos en la Ley Núm. 223-2011, *supra*.[36]

El Artículo 606 del Código Civil de 2020, 31 LPRA sec. 7285, dispone lo siguiente:

"La custodia del hijo, acompañada o no del ejercicio exclusivo de la patria potestad, puede asignarse a un solo progenitor:
(a) mientras se ventila el proceso de divorcio o de nulidad del matrimonio;

---

[36] En específico el Artículo 605 del Código Civil de 2020, *supra*, dispone lo siguiente:
"El tribunal no concederá la custodia compartida:
(a) cuando uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos y garantizar la seguridad e integridad física, mental y emocional de estos;
(b) cuando los actos u omisiones de uno de los progenitores resultan perjudiciales a los hijos o constituyen un patrón de ejemplos corruptores;
(c) cuando uno de los progenitores, su cónyuge o pareja consensual ha sido convicto por actos constitutivos de maltrato de menores;
(d) cuando uno de los progenitores se encuentra confinado en una institución carcelaria;
(e) cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica;
(f) cuando uno de los progenitores ha cometido abuso sexual o cualquiera de los delitos sexuales tipificados en el Código Penal de Puerto Rico hacia algún menor; y
(g) cuando uno de los progenitores, su cónyuge o pareja consensual es adicto a drogas ilegales o a alcohol."

(b) luego de decretada la disolución o anulado el matrimonio; o

(c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo.

En estos casos no puede entorpecerse o prohibirse el contacto del otro progenitor con su hijo, aunque puede regularse en las circunstancias y del modo que autoriza este Código."

Respecto a las recomendaciones de los trabajadores sociales, el Artículo 8 de la Ley Núm. 223-2011, 32 LPRA sec. 3186, establece que "[l]as **recomendaciones** sobre custodia que emitan los trabajadores sociales, será uno de los factores a considerar por el tribunal para hacer la determinación, pero no será el único". Por lo cual, "el tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes". *Id.*

En dicha dirección, y si bien es cierto que el TPI siempre retendrá discreción judicial para determinar y adjudicar la custodia, en atención al principio rector del mejor interés y bienestar del menor el TPI deberá considerar las recomendaciones sobre custodia que emitan los trabajadores sociales. Véanse, *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016); *Rexach v. Ramírez*, 162 DPR 130, 147–148 (2004); *Maldonado v. Burris*, 154 DPR 161, 164 (2001); *Depto. de la Familia v. Soto*, 147 DPR 618 (1999); *Torres, Ex parte*, 118 DPR 469 (1987); *Ortiz v. Vega*, 107 DPR 831 (1978); *Nudelman v. Ferrer Bolívar*, 107 DPR 495 (1978); *Marrero Reyes v. García Ramírez*, 105 DPR 90 (1976). Es por tal razón que este cuenta con la facultad de ordenar la comparecencia de todas las personas que puedan ayudar a determinar la mejor manera de proteger el bienestar del menor. *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652. Por lo mismo, los trabajadores sociales tienen la responsabilidad de preparar un Informe Social Forense cuando se lo requiera un tribunal. *Íd.*

Nuestro Tribunal Supremo ha dispuesto que: "[a]nte una determinación sobre *custodia*, los tribunales están llamados a utilizar como criterio rector el bienestar y los mejores intereses del menor. *Jusino González v. Norat Santiago*, 2023 TSPR 47; 211 DPR _____ (2023); *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 651. Por tanto, la "decisión del tribunal relativa a la **custodia** de un menor es una a la que se debe llegar luego de realizar un análisis **objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración**, teniendo como único y principal objetivo el bienestar de los menores." *Jusino González v. Norat Santiago*, supra; *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005). "Nótese que, al dilucidar un cambio de **custodia** de un menor, el foro judicial debe contar con la información más completa y variada que sea posible de modo que pueda resolver acorde." *Jusino González v. Norat Santiago*, supra; *Pena v. Pena*, 164 DPR 949, 959 (2005).

**-C-**

La Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Const. E.L.A., LPRA Tomo 1, pág. 301 (2016), al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, U.S. CONST. amends. V; XIV, garantizan que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Bajo el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell,* 133 DPR 881, 887–888.

En varias ocasiones, nuestro Tribunal Supremo ha expresado que el debido proceso de ley exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, a saber: (1) la notificación adecuada de la reclamación presentada; (2) que el

proceso se lleve a cabo ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de un abogado; y (6) que la decisión se fundamente en el expediente. *Álvarez v. Arias*, 156 DPR 352, 365 (2002). Cuando el tribunal actúa de forma inconsistente con estos derechos, ello acarrea la nulidad de la sentencia. R. Hernández Colón, Derecho Procesal Civil, 5ta ed., San Juan, Ed. Lexis Nexis de PR, Inc., 2010, pág. 407.

**-III-**

La parte aquí peticionaria alega que erró el TPI al ordenar arbitrariamente la remoción de la custodia del menor E.D.G.V., sin mediar una investigación social que lo justifique, sin determinar la capacidad del recurrido para ostentar la custodia del menor, sin existir fundamentos que lo justifiquen y sin tomar en consideración el mejor bienestar e intereses del menor en contravención al debido proceso de ley. Además, alega la parte peticionaria que erró el foro primario al abusar de su discreción al privarle de forma arbitrariamente de su derecho a relacionarse filialmente con su hijo ello en contravención al debido proceso de ley.

En la situación fáctica particular de este caso es forzoso colegir que ante la ausencia de una notificación adecuada de la Sra. Vélez Rivera para la vista del 21 de febrero de 2023 no se cumplió con el debido proceso de ley en la vertiente procesal. En particular el diligenciamiento personal de la citación de la Sra. Vélez Rivera, los alguaciles nunca lo pudieron realizar y según surge de las anotaciones del diligenciamiento, se le dejó una nota del alguacil para que compareciera al tribunal a recoger la citación de la vista, lo cual nunca ocurrió. Posteriormente, el 16 de febrero de 2023, los alguaciles le dejaron copia de la citación. De la revisión del legajo judicial, así como de las constancias de SUMAC no surge que se hubiera notificado la vista por correo postal a la dirección que obra

en autos de la Sra. Vélez Rivera. La parte aquí peticionaria según enunciado no fue notificada de forma adecuada, dicha parte como mínimo tenía derecho a una notificación adecuada, y la parte determinaba si asistía o no al proceso, con las consecuencias que dicha actuación pudiera conllevar, como en otras instancias ha sucedido en este caso.

El TPI como mínimo debió salvaguardar el derecho de la parte aquí peticionaria a ser notificada adecuadamente de la vista, al así no hacerlo le privó de su derecho a comparecer, estar asistida de abogado, poder presentar prueba a su favor, contrainterrogar testigos y examinar evidencia, a ser oída, y que la decisión se fundamentara en el expediente tomándole en consideración.

En el caso de autos, el TPI ante los argumentos en reconsideración sobre el cambio de custodia del menor refirió el caso nuevamente a la Unidad Social de forma que la Sra. Vélez Rivera pudiera ser entrevistada y cooperara con el proceso de evaluación social. Sin embargo, luego de haber sido debidamente citada la Sra. Vélez Rivera nuevamente no compareció a la Unidad Social. Por tanto, el foro primario luego de haberle dado una segunda oportunidad a la parte aquí peticionaria se sostuvo en su determinación de cambio de custodia y relevó a la Unidad Social de continuar con el referido de estudio social.

Es importante puntualizar que la *Resolución* emitida por el TPI el 21 de febrero de 2023, notificada el 28 de febrero de 2023, y enmendada ese mismo día y notificada el 6 de marzo de 2023, no tiene determinaciones de hechos sobre la prueba que evalúo y aquilató para hacer el cambio de custodia. Es fundamental y trascendental en los casos de custodia, que aunque una parte no este cooperando con el proceso, evaluar la prueba correspondiente o contar con un informe que como mínimo reseñe el cernimiento de la parte que está cooperando con la evaluación social en términos

de entrevista a los colaterales, capacidad de satisfacer las necesidades del menor, visitas a la comunidad, visitas a la escuela, evaluación del acomodo propuesto para el menor, evaluación del área de salud mental, antecedentes penales, grupo de apoyo, entre otros factores, mandatados en el Artículo 7 de la Ley Núm. 223-2011, *supra.*

Por tanto, en aras de velar por el interés óptimo del menor E.D.G.V. y siendo cautelosos y prudentes ante los efectos que pueda causarle los cambios constantes de custodia, en los cuales han mediado agentes del orden público, se va a mantener el estatus actual del caso, pero como una custodia provisional del menor con el Sr. Gálvez Rodríguez hasta que se pueda celebrar la vista urgente que estamos ordenando. Además, dentro del término de cinco (5) días, se deberán coordinar relaciones materno filiales provisionales supervisadas en la Unidad Social de forma que la parte aquí peticionaria pueda relacionarse con el menor antes de la celebración de la vista urgente ordenada.

En el caso ante nos, es imperativo que se celebre una vista urgente de custodia y relaciones filiales en el término de quince (15) días, en la cual las partes deberán comparecer para presentar prueba a su favor, defenderse de las alegaciones en su contra y el TPI pueda evaluar la prueba que presentaran las partes. Además, el TPI deberá ordenar nuevamente el correspondiente estudio social de forma que pueda contar con la información más completa y variada posible que le permita tomar una determinación final. *Jusino González v. Norat Santiago*, supra. Sin embargo, se les apercibe a las partes que deben ser cooperadores con los procesos judiciales e intervenciones de la Unidad Social, y que de no cumplir así las partes el tribunal podrá continuar con los procesos como ha ocurrido en una primera ocasión en este caso. Las partes deben tener claro que el norte siempre del tribunal va a ser el interés

óptimo del menor y no los deseos exclusivos de las partes. El menor no debe quedar cautivo del proceso judicial.

**-IV-**

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari*, se revocan las *Órdenes* recurridas y se devuelve el caso al foro de instancia para coordinar relaciones materno filiales provisionales supervisadas en la Unidad Social dentro del término de cinco (5) días; y para la celebración de una vista urgente de custodia y relaciones filiales en el término de quince (15). Además, se ordena que se emita nuevamente la correspondiente orden de estudio social sobre custodia y relaciones filiales y la continuación de los procedimientos de conformidad a lo aquí intimado.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento,[37] 4 LPRA Ap. XXII-B R. 35, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que se tenga que esperar por nuestro mandato.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.